UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRETT LEE WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TERRY ELI HILL, M.D., *et al.*,<br><br>　　　　　Defendants. | 1:16-cv-00540-LJO-EPG (PC)<br><br>SCREENING ORDER DISMISSING AMENDED COMPLAINT (Doc. 9) |

## I. <u>SCREENING REQUIREMENT AND STANDARD</u>

Plaintiff Brett Lee Williams is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought under 42 U.S.C. § 1983. Plaintiff filed his initial complaint on April 18, 2016. On June 20, 2016, the Court dismissed Plaintiff's complaint with leave to amend. On July 27, 2016, Plaintiff filed a first amended complaint, which is currently before the Court for screening. On August 5, 2016, Plaintiff filed a document titled "Judicial Notice of Continuing Violation of Retatiation [*sic*]" ("Plaintiff's Notice").[1] Doc. 8.

The Court is required to screen complaints brought by prisoners seeking relief against a

---

[1] Courts generally may not consider materials outside of the complaint when determining whether a plaintiff has stated a claim upon which relief may be granted. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1989). Exceptions are permitted only if the materials are part of the complaint, such as appendices or exhibits, if the authenticity of the materials is not contested and the complaint necessarily relies on them, or if the materials are judicially noticeable. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). While Plaintiff's Notice is styled as a request for judicial notice, the document actually consists of Plaintiff's contentions that he was retaliated against when prison mailroom staff who did not date stamp Plaintiff's legal mail. Doc. 8 at 1-2. A fact is judicially noticeable if it is "not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Ev. 201(b). Since there are no judicially noticeable facts contained in Plaintiff's Notice, and since it is not part of the complaint or necessarily relied upon by any part of the complaint, the Court may not consider Plaintiff's Notice when evaluating the complaint.

1

government entity, or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). The § 1915A screening standard "incorporates the familiar standard applied in the context of failure to state a claim under Federal rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). When a plaintiff is proceeding in forma pauperis but § 1915A does not apply, "the court 'shall dismiss the case at any time if the court determines' that the action 'is frivolous or malicious,' 'fails to state a claim on which relief may be granted,' or 'seeks monetary relief against a defendant who is immune from such relief.'" *Pierce v. San Francisco Exam'r*, No. 15-CV-06051-EMC, 2016 WL 2851649, at *1 (N.D. Cal. May 16, 2016) (quoting 28 U.S.C. § 1915(e)(2)). An inmate who has had three or more prior actions or appeals dismissed on one of these three bases, and has not alleged imminent danger of serious physical injury, does not qualify to proceed in forma pauperis. *See* 28 U.S.C. § 1915(g).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts are "not required to indulge unwarranted inferences." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.2d 1049, 1064 (9th Cir. 2008).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). To survive screening, a plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The mere possibility that a defendant acted unlawfully is

not sufficient. *Id*.

## II. **PLAINTIFF'S ALLEGATIONS**

Plaintiff brings claims against the following Defendants in their individual and official capacities: (1) Terry Eli Hill, M.D., Chief Medical Officer/Receiver for California Correctional Health Care Service ("CCHCS"); (2) J. Lewis, Deputy Director of Policy and Risk Management Services; (3) C. Kerie, staff member at Policy and Risk Management Services; (4) R. J. Rackley, Warden of Folsom State Prison ("FSP"); (5) Teresa Kamura-Yip, FSP Chief Executive Officer Health Care; (6) K. Yount, FSP Health Care Appeals Coordinator; (7) E. Flores, M.D., at North Kern State Prison ("NKSP"); I. Ogbuehi, FNP[2] at Pleasant Valley State Prison ("PVSP"); Benjamin Lee, M.D., at FSP. Doc. 9 at ¶¶ 6-14.

All facts are taken from Plaintiff's first amended complaint and assumed to be true only for the purpose of this screening. Plaintiff was incarcerated at California Correctional Institute ("CCI") from August 11, 2005, until an unknown date,[3] California State Prison Corcoran ("CSP-COR") from November 23, 2005 to April 7, 2008, NKSP from April 7, 2008 until July 27, 2010, and PVSP from July 27, 2010, until January 9, 2013. Doc. 9 at ¶ 5. Plaintiff has been incarcerated at FSP since January 10, 2013. *Id*. Since October 2005, Plaintiff has been enrolled in a chronic care program for his arteriosclerosis. *Id*.

When Plaintiff entered CCI on August 11, 2005, he did not have any nighttime breathing problems. Doc. 9 at ¶ 20. Plaintiff was diagnosed with allergic rhinitis while at CSP-COR, sometime between November 23, 2005 and April 7, 2008. *Id*. At that time, he was prescribed chlorpheniramine for nasal congestion. *Id*. On November 20, 2007, the California Department of Corrections issued a memorandum pertaining to the California Department of Public Health's recommendation that African

---

[2] Presumably an abbreviation for Family Nurse Practitioner.

[3] Plaintiff's complaint does not indicate when he left CCI.

3

American inmates be removed from areas in the San Joaquin Valley where coccidioides immitis spores[4] were endemic. Doc. 9 at ¶ 17.

On August 12, 2008, after Plaintiff was transferred to NKSP, Dr. V.V. Kitts diagnosed Plaintiff with chronic sinusitis without deformed septum. Doc. 9 at ¶ 21. On June 2, 2009, Dr. W. Suesberry diagnosed Plaintiff with a deformed/deviated septum, prescribed a trial of loratadine or singulair, and referred Plaintiff for a second opinion on the turbinectomy Plaintiff requested, noting that Plaintiff was steroid-resistant and chlorpheniramine was not effective against allergic rhinitis. Doc. 9 at ¶ 21; Doc. 9 at 49-50. On July 28, 2009, Dr. Flores told Plaintiff that a second opinion would be at his own expense, and that the recommendations from Drs. Kitts and Suesberry had been administratively rejected. Doc. 9 at ¶ 22. Dr. Flores also attempted to persuade Plaintiff to stop seeking a turbinectomy. *Id*.

On July 21, 2010, Dr. D. Vega diagnosed Plaintiff with suspected upper airway resistance syndrome and obstructive apnea, and performed a sleep study of Plaintiff. Doc. 9 at ¶ 22; Doc. 9 at 55.[5] He also recommended a second night of sleep study to complete a CPAP titration. *Id.* Plaintiff transferred to PVSP on July 27, 2010, and the sleep study results were not forwarded from NKSP for 21 months. Doc. 9 at ¶ 22. On May 7, 2012, Ms. Ogbuehi denied the second night of sleep study and noted that the previous study indicated that Plaintiff had intermittent snoring. Doc. 9 at ¶ 24. Ms. Ogbuhei continued Plaintiff on the same treatment and medications. *Id*. On February 9, 2015, Betty Irwin, a nurse at FSP, associated Plaintiff's allergic rhinitis with prior exposure to cocci. Doc. 9 at ¶ 15.

Plaintiff filed grievance FSP-HC-15015653 at FSP on January 7, 2015, stating his refusal to participate in a cocci screening program and opposing any change in his medical classification. Doc. 9

---

[4] This fungus, also referred to as "cocci," is endemic to San Joaquin Valley soil and causes the disease coccidioidomycosis, commonly known as "Valley Fever," which has symptoms ranging from mild influenza-like illness to disseminated disease, in which the fungus spreads to other organs and may cause bone and joint infections, skin disease, soft tissue abscesses, and meningitis. *Edison v. United States*, 822 F.3d 510, 514 (9th Cir. 2016).

[5] Two successive paragraphs are numbered 22. The first is entirely on page 7 of Plaintiff's complaint, and the second begins on page 7 and continues onto page 8. Doc. 9 at 7-8. To avoid potential confusion from renumbering the remaining paragraphs of the complaint, the Court will treat both of the paragraphs numbered 22 as a single paragraph.

at ¶ 28; Doc. 9 at 25. Dr. Lee interviewed Plaintiff in connection with his grievance on January 26, 2015. Doc. 9 at 29. He told Plaintiff that his request to not participate in the cocci screening program had been granted, and explained that Plaintiff's medical classification was controlled by CCHCS, but that Dr. Lee did not have any information that Plaintiff's medical status would change. *Id*. Plaintiff's appeal was partially granted at first level review on January 27, 2015. *Id*. On February 10, 2015, Plaintiff sought second level review arguing that the first level appeal had not addressed his allegations of deliberate indifference and initial exposure to cocci. Doc. 9 at 26. The second level review request was accepted and Plaintiff's claims were denied on March 9, 2015. *Id*. Plaintiff sought third level review on March 15, 2015, stating that "[t]he deliberate indifference to the initial exposure to cocci is the reason for the 602." *Id*. In the third level review letter of June 5 2015, CCHCS denied Plaintiff's appeal, noting that on May 27, 2014, Plaintiff received a medical classification designating him as high risk and precluding Plaintiff for endorsement to Avenal State Prison and PVSP. Doc. 9 at 27. The letter also stated that the review exhausted Plaintiff's administrative remedies of FSP-HC-15015653. *Id*.

Mr. Lewis's office sent Plaintiff's third level review completion letter to the FSP-HC appeals office rather than to Plaintiff directly. Doc. 9 at ¶ 30. Plaintiff filed a second grievance on March 9, 2015. Doc. 9 at ¶ 31. On March 24, 2015, the NKSP Health Care Appeals Office cancelled Plaintiff's appeal related to grievance NKSP-HC-15026065 because the appeal had not been filed within 30 calendar days of the event leading to the filing of the appeal. Doc. 9 at 38. Plaintiff received the cancellation notice on April 8, 2015. Doc. 9 at 38. Plaintiff wrote on the cancellation notice that the notice constituted retaliation, that the grievance concerned a change in circumstances creating a new issue for FSP-HC-15015653, that the "only charting that connects [Plaintiff's] allergic Rhinits and Sleep Apnea [*sic*], for which treatment was refused at NKSP, and Cocci [*sic*] was 2-9-15 charting-herein the circumstances for this grievance," that the NKSP providers refused to respond to Plaintiff's form 22, and that no one signed for the notice or Plaintiff's form 602. Doc. 9 at 38. On April 9, 2015, Plaintiff received a notice that his appeal FSP-HC-15015749 was rejected because it was submitted at the wrong

5

level. Doc. 9 at 39, 42. He appealed the cancellation notice and rejection notice with appeal NKSP-HC-15026308 on April 22, 2015. Doc. 9 at ¶ 31; Doc. 9 at 39. Plaintiff received a cancellation notice for NKSP-HC-15026308 stating that his appeal NKSP-HC-15026065 had been cancelled because it was not timely filed, and directing him to contact FSP Medical Appeal Office for his concerns regarding FSP-HC-15015749. Doc. 9 at 43. Third level review generated another cancellation notice on September 11, 2015. Doc. 9 at ¶ 31.

K. Winters, the appeals coordinator at FSP-HC, and Ms. Kerie refused to process an appeal form filed by Plaintiff on May 5, 2015, instructing Plaintiff to remove an appendix. Doc. 9 at ¶ 32; Doc. 9 at 44. Plaintiff filed appeal number FSP-HC-15015838 in response and resubmitted FSP-HC-1501749. Doc. 9 at 44. He alleged that Ms. Kerie's rejection of his appeal violated his First and Fourteenth Amendment rights and made the appeal process unavailable to him, and sought monetary compensation and surgery for his allergic rhinitis. Doc. 9 at 46, 69. On June 5, 2015, Plaintiff's appeal was assigned to the Health Care Appeal Office for response with a due date of July 2, 2015. Doc. 9 at 61. The appeal bypassed first level review and Plaintiff interviewed Ms. Yount on June 5, 2015, and Dr. Lee on July 6, 2015. Doc. 9 at 45, 69. On July 2, 2015, Ms. Yount missed the deadline for first level review, and on July 3, 2015, Ms. Kamura-Yip missed the deadline for second level review. Doc. 9 at ¶¶ 34-35. On July 13, 2015,[6] Plaintiff's second level review determination noted that his request for monetary compensation was not within the scope of the internal appeals process and denied his appeal. Doc. 9 at 69-70. Plaintiff continued to appeal the determination and added an allegation that "Dr. Lee's interview results were predetermined by SLR." Doc 9 at 45. He also alleged that first level review was bypassed in order to prevent his timely filing of an action with the Claims Board. Doc. 9 at 47. On October 8, 2015, FSP-HC-15015838 was denied, exhausting Plaintiff's administrative remedies. Doc. 9 at 73. Plaintiff submitted a claim to the Claims Board on August 4, 2015, which was rejected at a September

---

[6] The initial determination letter was dated July 3, 2015, and was amended to reflect the actual issuance date of July 13, 2015. Doc. 9 at 69.

6

17, 2015, meeting. Doc. 9 at 75.

Plaintiff brings his §1983 claims against the various Defendants under three causes of action.[7] The first cause of action alleges that Defendants violated Plaintiff's rights under the Eighth Amendment and its state law counterpart, Article I, § 17 of the California Constitution ("§ 17")[8] by demonstrating deliberate indifference to his serious medical needs and by ignoring the health hazards posed by cocci to African-American and chronic care program inmates. Doc. 9 at ¶¶ 39-47. Plaintiff seeks punitive damages as well as injunctive and declaratory relief. Doc. 9 at ¶ 48. Plaintiff's second cause of action alleges that Defendants violated his right to free speech under the First Amendment and Article I § 2 of the California Constitution ("§ 2").[9] Doc. 9 at ¶¶ 49-59. Plaintiff alleges that Defendants violated his free speech rights by retaliating against him for filing grievances related to "the systemwide [*sic*] use of an underground policy and practice to ignore the health hazards" presented by cocci. Doc. 9 at ¶ 51. Plaintiff seeks punitive damages and injunctive and declaratory relief. Doc. 9 at ¶ 59. Plaintiff's third cause of action alleges due process and equal protection violations of his rights under the Fourteenth Amendment and Article I, § 7 of the California Constitution ("§7").[10] Doc. 9 at ¶ 60-71. Plaintiff

---

[7] Plaintiff's complaint is not clearly written and it is often difficult to determine what causes of actions he is specifically alleging. Since Plaintiff is a pro se inmate litigant, the Court has made every effort to construe his complaint liberally. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013).

[8] The Eighth Amendment prohibits "cruel and unusual punishments" while § 17 bans "cruel or unusual punishment." The disjunctive "or" used in § 17 is "a purposeful and substantive" distinction from the Eight Amendment's conjunctive "and," meaning that § 17 affords somewhat greater protection to criminal defendants. *People v. Haller*, 174 Cal. App. 4th 1080, 1092 (Cal. Ct. App. 2009); *see also People v. Anderson*, 493 P.2d 880, 883-86 (Cal. 1972) (superseded by constitutional amendment on other grounds). The state constitutional provision is construed "separately from its counterpart in the federal Constitution," *People v. Cartwright*, 39 Cal. App. 4th 1123, 1135-36 (Cal. Ct. App. 1995), but "[t]his does not make a difference from an analytic perspective." *People v. Palafox*, 231 Cal. App. 4th 68, 82 (Cal. Ct. App. 2014) (citing *People v. Mantanez*, 98 Cal. App. 4th 354, 358 n. 7 (Cal. Ct. App. 2002).

[9] The free speech clause of the First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press." Section 2 provides that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const. art. I § 2(a). While there are differences between the First Amendment and § 2 guarantees, when construing parallel constitutional provisions "[d]ecisions of the Unites States Supreme Court . . . are entitled to respectful consideration and ought to be followed unless persuasive reasons are presented for taking a different course." *People v. Teresinski*, 640 P.2d 753, 761 (Cal. 1982) (citations omitted).

[10] In pertinent part, § 7 provides that "[a] person may not be deprived of life, liberty, or property without due process of law

alleges that Defendants did so "by not being forthcoming regarding African American and inmates in chronic care programs were at risk to the hazards cocci posed [*sic*]." Doc. 9 at ¶ 62. He seeks punitive damages and injunctive and declaratory relief. Doc. 9 at ¶ 71.

### III. ANALYSIS

**A.     Plaintiff's Complaint Fails to State a Claim**

    **1.     Plaintiff's State Law Claims**

Plaintiff brings claims under 42 U.S.C. § 1983 alleging that Defendants violated sections 2, 7 and 17 of the California Constitution. Doc. 9 at ¶¶ 42, 54, 63. Section 1983 "provides a cause of action against any person who, under the color of state law, abridges rights unambiguously created by the Constitution or laws of the United States." *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012) (internal quotation marks and citations omitted) (citations omitted). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted). As the Ninth Circuit has held, while a § 1983 action may be brought "when a violation of a state law causes the deprivation of a right protected by the United States Constitution," § 1983 does not offer redress when "the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution." *Lovell v. Poway Unified School Dist.*, 90 F.3d 367, 369 (9th Cir. 1996). Therefore, the provisions of the California Constitution which Plaintiff invokes here cannot form the basis of a § 1983 claim. The rights and interests guaranteed by the federal Constitution and federal laws constitute the only rights which may be vindicated by a § 1983 action. To the extent that sections 2, 7, and 17 provide broader protection than the First, Fourteenth, and Eighth Amendments,

---

or denied equal protection of the laws." Cal. Const. art. I § 7(a). The § 7 guarantee of equal protection is the same in scope and effect as that guaranteed by the Fourteenth Amendment. *In re Evans*, 49 Cal. App. 4th 1263, 1270 (Cal. Ct. App. 1996). California courts have held that the due process provisions of the Fourteenth Amendment and § 7 are "identical in scope and purpose." *Nozzi v. Hous. Auth. of Los Angeles*, 425 Fed. App'x 539, 542 (9th Cir. 2011) (citing *Gray v. Whitmore*, 17 Cal. App. 3d 1, 20 (Cal. Ct. App. 1971).

they cannot constitute a basis for Plaintiff's § 1983 claims. Plaintiff does not attempt to bring claims under any law other than § 1983. Therefore, the Court will accordingly consider Plaintiff's allegations regarding the provisions of the California Constitution only to the extent that the rights asserted fall within the boundaries of Plaintiff's federal Constitutional rights.[11]

### 2. **Eighth Amendment Claim**

Under the Eighth Amendment, "prison officials are . . . prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014). "Deliberate indifference occurs when '[an] official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008). A prisoner may state "a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to [environmental conditions] that pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993). A potential hazard created by conditions of confinement may give rise to a claim of deliberate indifference, and prisoners have a constitutional right to safe conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 857 (1994). Showing deliberate indifference requires a two-part test. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). In the first step, "the inmate must show that the prison officials were aware of 'a substantial risk of serious harm' to an inmate's health or safety." *Id.* (quoting *Farmer*, 511 U.S. at 837). "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." *Thomas*, 611 F.3d at 1150 (citing *Farmer*, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.")).

---

[11] As explained below, the Court finds Plaintiff fails to state any viable federal claim. Accordingly, to the extent Plaintiff's claims under the California Constitution are brought as independent state-law causes of action, the Court declines to exercise supplemental jurisdiction over them. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1996) (cautioning that when all "federal claims are dismissed before trial . . . the state claims should be dismissed as well").

9

An Eighth Amendment cause of action also exists where the government has, with deliberate indifference, not met its obligation to provide for the basic human needs of prisoners. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). The evaluation of whether medical care rises to the level of deliberate indifference is two-pronged. First, a court must determine whether the plaintiff had serious medical needs. *Id*. Second, the court must determine whether the prison officials' conduct constituted "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A prison physician or care provider may also be deliberately indifferent in providing care, but the provider's actions must constitute something more than "mere negligence." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

**A. Medical Deliberate Indifference**

Plaintiff does not allege facts from which the Court can reasonably infer that any Defendant was deliberately indifferent to Plaintiff's serious medical needs.[12] The gist of Plaintiff's claim appears to be that some of the Defendants did not implement or prescribe the treatment, primarily a turbinectomy, sought by Plaintiff for his nighttime breathing problems, and told him that additional medical consultations would be at his own expense. Instead, Plaintiff received "routine treatment" including prescription medications. Doc. 9 at ¶ 24. Plaintiff's complaint does not indicate that the turbinectomy which Plaintiff seeks was recommended by any physician. Dr. Sussberry only offered a referral for a second opinion regarding the turbinectomy, and recommended medication as a treatment. Doc. 9 at 50. When defendant doctors have chosen one treatment and the plaintiff prefers another, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Plaintiff's complaint does

---

[12] The Court assumes that Plaintiff's alleged medical conditions of allergic rhinitis and obstructive sleep apnea are serious.

10

not meet that burden as he sets out no facts indicating that the routine treatment Plaintiff received was medically unacceptable. Plaintiff's complaint describes a difference of opinion as to the most effective treatment, or at most medical malpractice. "Mere indifference, negligence, or medical malpractice will not support [an Eighth Amendment] cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (internal quotation marks omitted). Moreover, there is no showing in the complaint that any Defendant interfered with Plaintiff's ability to seek or obtain medical treatment. Therefore, Plaintiff's Eighth Amendment medical claims fail. In the prior screening order, the Court dismissed Plaintiff's medical deliberate indifference claims for substantially the same reasons. *See* Doc. 5 at 5-6. Since Plaintiff has already been given an opportunity to amend this particular allegation to state a viable claim, Plaintiff's claim of deliberate indifference to his serious medical needs is DISMISSED without leave to amend.

### B. Qualified Immunity

Additionally, Plaintiff's Eighth Amendment conditions of confinement claims are precluded by qualified immunity. "The doctrine of qualified immunity protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting *Pearson*, 555 U.S. at 231). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[A] district court may dismiss a claim on qualified immunity grounds under 28 U.S.C. § 1915(e)(2)(B)(iii), but only if it is clear from the complaint that the plaintiff can present no evidence that could overcome a defense of qualified immunity." *Chavez v. Robinson*, 817 F.3d 1162,

1169 (9th Cir. 2016).

When determining whether qualified immunity shields the actions of an official, courts apply a two-pronged test. *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). The first prong considers "whether there has been a violation of a constitutional right" while the second prong addresses "whether that right was clearly established at the time of the [official's] alleged misconduct." *Id.* Courts are "permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances of the particular case at hand." *Pearson*, 555 U.S. at 236. The facts are construed in the light most favorable to the plaintiff. *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043-50 (9th Cir. 2002).

Defendants are state government officials. As explained below, this is a situation where the unsettled nature of the specific constitutional right asserted establishes that Defendants are entitled to qualified immunity. Therefore, the Court can "rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all," *Pearson*, 555 U.S. at 239, and will proceed directly to the second prong.

For the allegedly constitutional right to be "clearly established" at the time Defendants allegedly violated the right, Defendants must have had "fair and clear warning that their conduct [was] unlawful." *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (internal quotation marks omitted). If Defendants could have "reasonably but erroneously believed" that their conduct did not violate Plaintiff's rights, Defendants are entitled to qualified immunity. *Id.* at 1074. The determination of whether a constitutional right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Supreme Court has cautioned courts against "defin[ing] clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

The Ninth Circuit has not yet spoken on the issue of whether allegations of exposure to, or

contraction of, cocci can state an Eighth Amendment claim. The pertinent case law consists of short, unpublished, memorandum opinions reversing dismissals for failure to state a claim. In one case, the Ninth Circuit held that this Court erred in dismissing the case with prejudice because it was "not beyond doubt that [the plaintiff] could prove no set of facts in support of his claims that would entitled [*sic*] him to relief." *Smith v. Schwarzenegger*, 393 Fed. App'x 518, 519 (9th Cir. 2010). In a second case, the Ninth Circuit held that, "[g]iven the low threshold requirements of 28 U.S.C. § 1915A, dismissal of [the plaintiff's] action was improper at this early stage because [the plaintiff] alleged that prison officials were aware that inmates' exposure to valley fever posed a significant threat to inmate safety yet failed to take reasonable measures to avoid that threat." *Johnson v. Pleasant Valley State Prison*, 505 Fed. App'x 631, 632 (9th Cir. 2013). The court in *Johnson* specifically "express[ed] no opinion as to the sufficiency or merits of [the plaintiff's] allegations." *Id*. While *Johnson* suggests that it may be possible to state a cognizable Eighth Amendment Valley Fever claim, it does not indicate that the right Plaintiff here asserts was "clearly established." In a third case, the Ninth Circuit affirmed the dismissal of a case because the plaintiff "failed to allege facts showing that defendants were deliberately indifferent to a risk of [the plaintiff] contracting Valley Fever by housing him at Pleasant Valley State Prison." *Holley v. Scott*, 576 Fed. App'x 670, 670 (9th Cir. 2014). It is "a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, [a court] can conclude that the law was clearly established on the basis of unpublished decisions only." *Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir. 2002). These cases, taken together or singly, do not constitute "fair and clear warning" to Defendants that allowing African-American or chronic care program inmates to remain in an area where cocci is endemic constitutes deliberate indifference.

There is also no consensus at the district court level as to whether exposure to cocci may give rise to an Eighth Amendment claim. As this Court explained at length in *Smith v. Schwarzenegger*, 137 F. Supp. 3d 1233 (E.D. Cal. 2015), there is "obvious, legitimate, and reasonable disagreement among [district] judges" as to whether allegations of exposure to or contraction of cocci state an Eighth

13

Amendment claim. *Id*. at 1251. Some district courts have found that allegations which were similar to Plaintiff's did set forth a viable claim, while other courts have dismissed similar cases. *See Smith*, 137 F. Supp. 3d at 1248-50 (collecting and discussing cases). The law here is underdeveloped and contradictory, and no "consensus of cases of persuasive authority" exists such that a reasonable officer could not have believed the alleged conduct was unlawful. *See Wilson v. Layne*, 526 U.S. 603, 617 (1999). Though Plaintiff does not allege with specificity when he believes he was exposed to cocci, based on his amended complaint it was at some point prior to February 9, 2015, when a nurse associated his allergic rhinitis with prior cocci exposure. The disagreement among judges with regard to cocci and Valley Fever Eight Amendment claims, which persists despite the substantial litigation within this District, *see Smith*, 137 F. Supp. 3d at 1251 n. 19, prevents the Court from finding that Defendants' conduct violated a clearly established right because "[t]he state of the law was at best undeveloped" at all relevant times. *Wilson*, 526 U.S. at 617. Since the right Plaintiff asserts was not clearly established at the time it was allegedly violated, Defendants are entitled to qualified immunity. Accordingly, the Court DISMISSES Plaintiff's Eight Amendment claim without leave to amend.

### 3. <u>First Amendment Claim</u>

Plaintiff's second cause of action is premised on his allegation that Defendants violated his freedom of speech by retaliating against him for filing grievances. It is not clear on what facts Plaintiff bases this claim other than conclusory statements that Defendants were involved in an "underground" scheme to ignore health risks posed by cocci and intentionally delayed the processing of grievances and appeals Plaintiff filed with CCHCS.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights,

and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004) (footnote and citations omitted).

Plaintiff has not alleged sufficient facts to establish a claim of First Amendment retaliation. Plaintiff asserts that Defendants rejected or delayed his grievances and appeals, which constitutes an adverse action. An adverse action may be a harm or a threat of harm, and may be explicit or implied. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). Though an adverse action need not be an independent constitutional violation, inconsequential or de minimis harms do not constitute adverse actions. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (to support a claim a harm must be "more than minimal") (citations omitted); *see also Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) ("[S]ome adverse actions are so de minimis that they do not give rise to constitutionally cognizable injuries." (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999))). Even so, "a retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights." *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001). A prisoner need not demonstrate that his speech was actually suppressed. *Rhodes v. Robinson*, 408 F.3d 559, 459 (9th Cir. 2004) (rejecting arguments that a prisoner's ability to file a First Amendment retaliation claim belied his claim of chilling effects).

Three of Plaintiff's appeals were rejected or cancelled, namely NKSP-HC-15026065, FSP-HC-15015749, and NKSP-HC-15026308. NKSP-HC-15026065 was dismissed as untimely filed and FSP-HC-15015749 was dismissed as submitted at the incorrect level of review. The third appeal, NKSP-HC-15026308, appears to have been cancelled because it was an appeal of the aforementioned dismissals. Plaintiff alleges that "[t]he adverse effect of the three cancellation notices was to prevent Plaintiff from completion of the grievance process at NKSP." Doc. 9 at ¶ 31. While it is not clear from the complaint what issues he was unable to exhaust through the grievance process, the improper rejection or delay of Plaintiff's grievances and appeals by itself could plausibly deter a reasonable person from exercising First Amendment rights.

The Court need not determine whether Defendants' actions did in fact constitute adverse actions,

however. Even if the delays in processing his grievances were adverse actions, however, Plaintiff does not allege plausible facts which suggest that his grievances and appeals were delayed because of his protected activity of filing grievances and appeals. To show a causal connection between an alleged adverse action and a prisoner's protected conduct, "a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1271. An allegation of suspect timing may constitute circumstantial evidence of a causal connection, but ordinarily is not itself sufficient. Particularly here, where there is a necessary connection between the alleged protected activity of filing grievances and the alleged adverse action of denying appeals related to those grievances, there must be something more to show the type of causal connection contemplated in a retaliation action. This is not an insurmountable bar to Plaintiff's claim. All he need do is allege sufficient facts to permit the plausible inference that there was a causal relationship between his protected activity and the alleged retaliation. Therefore, Plaintiff's First Amendment claim is DISMISSED with leave to amend.

### 4. **Fourteenth Amendment Claims**

Plaintiff's third cause of action appears to be grounded in allegations that Defendants did not disclose the risk posed by cocci to African-American inmates and inmates in California correctional institutions, and thereby denied him due process. He also alleges that delays in processing and reviewing his various grievances and appeals by Defendants deprived him of due process. Finally, Plaintiff alleges that he was deprived of equal protection due to the same actions.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on

the inmate in relation to the ordinary incidents of prison life." *Id.*

Here, Plaintiff alleges that Defendants deprived him of due process in his grievance procedure. "The Due Process Clause provides prisoners two separate sources of protection against unconstitutional state disciplinary actions. First, a prisoner may challenge a disciplinary action which deprives or restrains a state-created liberty interest in some 'unexpected manner.'" *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 483-84. Second, a state action which does not impact a protected liberty interest may be challenged if it "nonetheless imposes some 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ramirez*, 334 F.3d 850 (quoting *Sandin*, 515 U.S. at 484). Plaintiff's amended complaint has no allegation which can be construed as a claim that Defendants imposed an "atypical and significant hardship" on Plaintiff.

For Plaintiff's due process claim to survive, therefore, he must have alleged that the grievance process was conducted in a manner such that it deprived or restrained a state-created liberty interest in an unexpected manner. "[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest implicated in processing of appeals because there is no entitlement to a specific grievance procedure) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982); *accord Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, [a prison grievance procedure] does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Further, while inmates have a fundamental constitutional right of access to the courts, *Lewis v. Casey*, 518 U.S. 343, 346 (1996), which extends to established grievance procedures, *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230,

n. 2 (2001), the right is merely to bring to court a grievance the inmate wishes to present and is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Lewis*, 518 U.S. at 354. To bring a claim for deprivation of access to the courts, a plaintiff must have suffered an actual injury by being shut out of court. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis*, 518 U.S. at 351.

The complaint does not indicate that Plaintiff's ability to file or appeal grievances was obstructed in any manner. One of his appeals was partially granted. A document attached to Plaintiff's complaint and sent to him from the Office of Third Level appeals denied his third appeal and informed Plaintiff that its decision "exhausts his administrative remedies." Doc. 9 at 73-74. Another document from the Victim Compensation and Government Claims Board indicated that "the court system is the appropriate means for resolution of [Plaintiff's] claims." Doc. 9 at 75. Plaintiff's amended complaint does not indicate that he was actually impaired in his ability to file grievances, and his allegations indicate that he was in fact able to file grievances which progressed through the grievance system. Given the foregoing, it is not clear from Plaintiff's complaint that he was denied due process, even assuming Defendants did not timely process his claims and appeals.[13] The Court simply cannot discern any way in which Plaintiff's rights were violated by Defendants' alleged actions. Consequently, Plaintiff's due process claim is DISMISSED with leave to amend.

Plaintiff has also failed to set out a cause of action supporting his equal protection claims. The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To establish an equal protection claim, a plaintiff must show that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). Alternately, a plaintiff may show that similarly situated individuals were

---

[13] Plaintiff repeatedly cites to Title 15, Article 8 of the California Code of Regulations, which sets forth the appeal rights of prisoners in California penal institutions, and alleges that the handling of his grievances and appeals did not conform with those regulations. As the Court has explained, § 1983 actions only vindicate the deprivation of federal constitutional and statutory rights. Section 1983 does not provide redress for the violation of state prison regulations.

intentionally subject to disparate treatment without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the prison context, the right to equal protection is viewed through a standard of reasonableness, specifically whether the actions of prison officials are "reasonably related to legitimate penological interests." *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Plaintiff identifies himself as an African-American inmate. Doc. 9 ¶ 17.[14] Assuming that he is a member of a protected class, the facts alleged in Plaintiff's complaint do not show the existence of any "underground" policy or practice of targeting him or other African-American inmates. Plaintiff has also not alleged any other facts which show that he was subjected to disparate treatment as compared to similarly situated individuals. Status in a protected class alone does not set forth an equal protection claim absent at least some facts which would indicate disparate treatment or discrimination. Plaintiff has not alleged any such facts. Therefore, his Fourteenth Amendment Equal Protection claim also fails, and the Court DISMISSES the claim with leave to amend.

## IV. **CONCLUSION AND ORDER**

For the reasons stated, Plaintiff's complaint fails to state a claim on which relief may be granted. Accordingly, the Court DISMISSES the complaint with partial leave to amend. As explained above, Plaintiff's claims of Eighth Amendment deliberate indifference to Plaintiff's serious medical needs or Plaintiff's conditions of confinement related to cocci exposure are denied without leave to amend. Plaintiff therefore may not amend his complaint to allege either Eighth Amendment claim. Any amended complaint shall be filed within 30 days of service of this Order.

If Plaintiff elects to amend his complaint, he may not change the nature of this suit by alleging new, unrelated claims. *See Aul v. Allstate Life Ins. Co.*, 993 F.2d 881, 884 (9th Cir. 1993) ("A claim based on different rights and established by different transactional facts will be a different cause of action."); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different

---

[14] The paragraph which begins at page 5, line 25, of Plaintiff's complaint is not numbered, but it is preceded by paragraph 16 and followed by paragraph 18, and the Court infers that the Plaintiff intended to designate the paragraph number 17. *See* Doc. 9 at 5-6.

defendants belong in different suits."). Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. *Iqbal*, 556 U.S. at 677. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each named defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Finally, an amended complaint supersedes the original complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), and must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted). Thus, any amended complaint must be written or typed so that it so that it is complete in itself without reference to any earlier filed complaint. Local Rule 220. This will be Plaintiff's last opportunity to plead properly his First and Fourteenth Amendment allegations. He will not again be given leave to amend.

IT IS SO ORDERED.

Dated: **April 26, 2017**     /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE