| | |
|---|---|
| BRETT LEE WILLIAMS, | Case No. 1:16-cv-00540-LJO-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S THIRD AMENDED COMPLAINT BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM |
| v. | |
| T. E. HILL, et al., | |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS |
| | (ECF NO. 46) |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Brett Williams ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Before the Court for screening is Plaintiff's Third Amended Complaint ("TAC"), which was filed November 19, 2018. (ECF No. 46).

Plaintiff's prior complaints have been screened twice by Chief District Judge Lawrence J. O'Neill, who dismissed all claims with limited leave to amend. Plaintiff's claims for deliberate indifference to serious medical needs under the Eighth Amendment were previously dismissed without leave to amend for the reasons described in those orders.

Plaintiff's TAC largely attempts to reassert his Eighth Amendment claim based on his medical care against over thirty defendants. Because those claims have already been dismissed

with prejudice, the Court will recommend that Plaintiff's TAC be dismissed without further leave to amend, and that the case be closed.

Plaintiff has twenty-one days from the date of service of this order to file objections to these findings and recommendations.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. BACKGROUND

Plaintiff filed his first complaint over two years ago, on April 18, 2016. (ECF No. 1). His complaints have been screened twice, with holdings relevant to this screening order.

Plaintiff's first complaint, filed April 18, 2016, is 75 pages long, including exhibits. (ECF

2

No. 1). That complaint includes five claims against Defendants under § 1983. The first two claims allege Defendants violated Plaintiff's rights under the Eighth Amendment and its state law corollary, Article I, § 17 of the California Constitution ("§ 17"). Both claims are based on Plaintiff's assertions that Defendants violated his rights so by not informing him that he had a high risk for future irreparable serious medical harm from Cocci exposure; that his Obstructive Sleep Apnea at night and Allergic Rhinitis during the day were injuries linked to Cocci exposure while Defendants housed Plaintiff in known Cocci endemic areas; and that Defendants failed to render recommended medical treatment for said chronic Cocci linked injuries. Plaintiff's third and fourth claims, brought under the Fourteenth Amendment and Article I, § 15 of the California Constitution ("§ 15"), are also premised on these assertions, but also allege that Defendants violated his Due Process rights "by their participation in retaliatory acts to impede Plaintiff from timely filing tort claims after Plaintiff filed . . . [a] grievance." Plaintiff's fifth claim, brought under the First Amendment and its state law corollary, Article I, § 2(a) of the California Constitution ("§ 2(a)), adds the allegation that Defendants violated his First Amendment and § 2(a) rights "by their participation in acts to chill/prevent/impede Plaintiff from timely filing tort claim notices after Plaintiff filed . . . [a] grievance."

Judge O'Neill screened Plaintiff original complaint on June 20, 2016. (ECF No. 5). Regarding the Eighth Amendment claim, the Court stated:

> Plaintiff's first two claims do not state a viable claim for a number of reasons. To the extent the claims are premised on Defendants' failure to warn Plaintiff of the dangers posed by cocci exposure, the claims fail. The Court is unaware of any case holding that a prison official's failure to warn an inmate of a potential dangerous condition could provide the basis for an Eighth Amendment violation.
>
> To the extent Plaintiff's claims are premised on his assertion that Defendants violated his rights by exposing him to cocci, his claims fail. First, Plaintiff appears to allege he was first exposed to cocci sometime in 2008 when housed at Corcoran. None of the Defendants is alleged to have been involved with CSP or the decision of housing Plaintiff there. Nor are Defendants alleged to have any control over where Plaintiff is housed. Second, Plaintiff fails to allege any facts suggesting that, at the time of his placement in CSP, Defendants knew of the alleged danger cocci in the area posed and failed to respond. Put another way, Plaintiff fails to allege facts demonstrating that Defendants were deliberately indifferent to the risks cocci posed to Plaintiff.

(ECF No. 5, at p. 5). As to the Eighth Amendment claims regarding medical care, the Court stated:

> Plaintiff does not allege facts suggesting any Defendant was deliberately indifferent to Plaintiff's serious medical needs. The primary basis for Plaintiff's medical claims is that some of the Defendants did not implement the recommendations of some of his previous medical providers. Specifically, Plaintiff claims certain Defendants refused to prescribe Plaintiff certain prescriptions and procedures that his previous doctors had recommended, instead denying them or prescribing him different ones. Plaintiff also alleges Defendants failed to inform him that his medical problems were linked to his cocci exposure when they first presented. At best, Plaintiff's allegations suggest a mere difference of medical opinion and/or a failure to diagnose Plaintiff correctly. They do not suggest medical malpractice—which would still be insufficient under the Eighth Amendment—much less deliberate indifference, particularly given that Plaintiff does not allege any resulting injury from Defendants' alleged conduct.

(ECF No. 5, at p. 6) (footnote omitted). Regarding Plaintiff's Fourteenth and First Amendment claims, the Court stated:

> Plaintiff claims certain Defendants failed to process his medical tort claim and his multiple appeals of the denial of the claim in a timely manner. But it does not appear Plaintiff was unable to file the claim or appeals, or that any alleged delay affected Plaintiff's rights. In fact, Plaintiff alleges that he "completed the tort claim notice proceedings on August 21, 2015." Plaintiff provides as attachments to his complaint a document from the Office of Third Level Appeals denying his third appeal and informing Plaintiff that its decision "exhausts his administrative remedies." Plaintiff also provides as an attachment an August 21, 2015 document from the Victim Compensation and Government Claims Board stating that Board's belief that "the court system is the appropriate means for resolution of [Plaintiff's] claim," that the Board would act on his claim on September 17, 2015, and that the Board's rejection of his claim will allow Plaintiff to litigate the claim. The Court therefore cannot discern how any of Plaintiff's rights were violated, even assuming Defendants did not timely process Plaintiff's claims and appeals as he alleges for retaliatory reasons.

(ECF No. 5, at pgs. 6-7). The Court dismissed Plaintiff's complaint with leave to amend.

After an extension of time, Plaintiff filed a 75-page First Amended Complaint on July 27, 2016 (ECF No. 9). Rather than repeat it here, the Court refers to the extensive summary of Plaintiff's First Amended Complaint provided in the screening order of April 26, 2017. (ECF No. 10, at pgs. 3-8).

Judge O'Neill screened Plaintiff's First Amended Complaint on April 26, 2017. (ECF No. 10). The Court reviewed the complaint's allegations in detail and found that the Eighth

Amendment claims should be dismissed without leave to amend and allowed limited leave to amend as to other claims. The Court concluded, "the Court DISMISSES the complaint with partial leave to amend. As explained above, Plaintiff's claims of Eighth Amendment deliberate indifference to Plaintiff's serious medical needs or Plaintiff's conditions of confinement related to cocci exposure are denied without leave to amend. Plaintiff therefore may not amend his complaint to allege either Eighth Amendment claim. . . . This will be Plaintiff's last opportunity to plead properly his First and Fourteenth Amendment allegations. He will not again be given leave to amend." (ECF No. 10, at pgs. 19-20). As the Court thoroughly addressed the Eighth Amendment claims in that order, the Court will not repeat that analysis here.

Regarding the claims that Plaintiff was given leave to amend, namely the First and Fourteenth Amendment claims, the Court gave the following guidance (emphasis added):

> Plaintiff's second cause of action is premised on his allegation that Defendants violated his freedom of speech by retaliating against him for filing grievances. It is not clear on what facts Plaintiff bases this claim other than conclusory statements that Defendants were involved in an "underground" scheme to ignore health risks posed by cocci and intentionally delayed the processing of grievances and appeals Plaintiff filed with CCHCS.
>
> Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004) (footnote and citations omitted).
>
> Plaintiff has not alleged sufficient facts to establish a claim of First Amendment retaliation. Plaintiff asserts that Defendants rejected or delayed his grievances and appeals, which constitutes an adverse action. An adverse action may be a harm or a threat of harm, and may be explicit or implied. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). Though an adverse action need not be an independent constitutional violation, inconsequential or de minimis harms do not constitute adverse actions. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (to support a claim a harm must be "more than minimal") (citations omitted); *see also Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) ("[S]ome adverse actions are so de minimis that they do not give rise to constitutionally cognizable injuries." (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999))). Even so, "a retaliation claim may assert an injury no more tangible than a chilling effect on First

Amendment rights." *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001). A prisoner need not demonstrate that his speech was actually suppressed. *Rhodes v. Robinson*, 408 F.3d 559, 459 (9th Cir. 2004) (rejecting arguments that a prisoner's ability to file a First Amendment retaliation claim belied his claim of chilling effects).

Three of Plaintiff's appeals were rejected or cancelled, namely NKSP-HC-15026065, FSP-HC-15015749, and NKSP-HC-15026308. NKSP-HC-15026065 was dismissed as untimely filed and FSP-HC-15015749 was dismissed as submitted at the incorrect level of review. The third appeal, NKSP-HC-15026308, appears to have been cancelled because it was an appeal of the aforementioned dismissals. Plaintiff alleges that "[t]he adverse effect of the three cancellation notices was to prevent Plaintiff from completion of the grievance process at NKSP." Doc. 9 at ¶ 31. While it is not clear from the complaint what issues he was unable to exhaust through the grievance process, the improper rejection or delay of Plaintiff's grievances and appeals by itself could plausibly deter a reasonable person from exercising First Amendment rights.

The Court need not determine whether Defendants' actions did in fact constitute adverse actions, however. Even if the delays in processing his grievances were adverse actions, however, **Plaintiff does not allege plausible facts which suggest that his grievances and appeals were delayed because of his protected activity of filing grievances and appeals. To show a causal connection between an alleged adverse action and a prisoner's protected conduct, "a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct."** *Brodheim*, 584 F.3d at 1271. An allegation of suspect timing may constitute circumstantial evidence of a causal connection, but ordinarily is not itself sufficient. **Particularly here, where there is a necessary connection between the alleged protected activity of filing grievances and the alleged adverse action of denying appeals related to those grievances, there must be something more to show the type of causal connection contemplated in a retaliation action. This is not an insurmountable bar to Plaintiff's claim. All he need do is allege sufficient facts to permit the plausible inference that there was a causal relationship between his protected activity and the alleged retaliation.** Therefore, Plaintiff's First Amendment claim is DISMISSED with leave to amend.

. . . .

Plaintiff's third cause of action appears to be grounded in allegations that Defendants did not disclose the risk posed by cocci to African-American inmates and inmates in California correctional institutions, and thereby denied him due process. He also alleges that delays in processing and reviewing his various grievances and appeals by Defendants deprived him of due process. Finally, Plaintiff alleges that he was deprived of equal protection due to the same actions.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the

6

existence of a liberty interest for which the protection is sought. States may under certain circumstances create liberty interests which are protected by the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Id.*

Here, Plaintiff alleges that Defendants deprived him of due process in his grievance procedure. "The Due Process Clause provides prisoners two separate sources of protection against unconstitutional state disciplinary actions. First, a prisoner may challenge a disciplinary action which deprives or restrains a state-created liberty interest in some 'unexpected manner.'" *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 483-84. Second, a state action which does not impact a protected liberty interest may be challenged if it "nonetheless imposes some 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ramirez*, 334 F.3d 850 (quoting *Sandin*, 515 U.S. at 484). **Plaintiff's amended complaint has no allegation which can be construed as a claim that Defendants imposed an "atypical and significant hardship" on Plaintiff.**

**For Plaintiff's due process claim to survive, therefore, he must have alleged that the grievance process was conducted in a manner such that it deprived or restrained a state-created liberty interest in an unexpected manner**. "[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest implicated in processing of appeals because there is no entitlement to a specific grievance procedure) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982); *accord Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, [a prison grievance procedure] does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Further, while inmates have a fundamental constitutional right of access to the courts, *Lewis v. Casey*, 518 U.S. 343, 346 (1996), which extends to established grievance procedures, *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230, n. 2 (2001), the right is merely to bring to court a grievance the inmate wishes to present and is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Lewis*, 518 U.S. at 354. **To bring a claim for deprivation of access to the courts, a plaintiff must have suffered an actual injury by being shut out of court.** *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis*, 518 U.S. at 351.

**The complaint does not indicate that Plaintiff's ability to file or appeal grievances was obstructed in any manner.** One of his appeals was partially

7

granted. A document attached to Plaintiff's complaint and sent to him from the Office of Third Level appeals denied his third appeal and informed Plaintiff that its decision "exhausts his administrative remedies." Doc. 9 at 73-74. Another document from the Victim Compensation and Government Claims Board indicated that "the court system is the appropriate means for resolution of [Plaintiff's] claims." Doc. 9 at 75. **Plaintiff's amended complaint does not indicate that he was actually impaired in his ability to file grievances, and his allegations indicate that he was in fact able to file grievances which progressed through the grievance system. Given the foregoing, it is not clear from Plaintiff's complaint that he was denied due process, even assuming Defendants did not timely process his claims and appeals. The Court simply cannot discern any way in which Plaintiff's rights were violated by Defendants' alleged actions.** Consequently, Plaintiff's due process claim is DISMISSED with leave to amend.

Plaintiff has also failed to set out a cause of action supporting his equal protection claims. The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To establish an equal protection claim, a plaintiff must show that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). Alternately, a plaintiff may show that similarly situated individuals were intentionally subject to disparate treatment without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the prison context, the right to equal protection is viewed through a standard of reasonableness, specifically whether the actions of prison officials are "reasonably related to legitimate penological interests." *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Plaintiff identifies himself as an African-American inmate. Doc. 9 ¶ 17. **Assuming that he is a member of a protected class, the facts alleged in Plaintiff's complaint do not show the existence of any "underground" policy or practice of targeting him or other African-American inmates. Plaintiff has also not alleged any other facts which show that he was subjected to disparate treatment as compared to similarly situated individuals. Status in a protected class alone does not set forth an equal protection claim absent at least some facts which would indicate disparate treatment or discrimination. Plaintiff has not alleged any such facts.** Therefore, his Fourteenth Amendment Equal Protection claim also fails, and the Court DISMISSES the claim with leave to amend.

(ECF No. 10) (footnote omitted).

Plaintiff was given 30 days from that date of that order, which was dated April 26, 2017, to file an amended complaint, only regarding the causes of action dismissed with leave to amend. (ECF No. 10). Plaintiff requested an extension of time to file an amended complaint (ECF No. 11) and the Court gave him an extension until June 30, 2017 (ECF No. 12). Rather than file an

amended complaint, Plaintiff filed a notice of appeal. (ECF No. 15). On August 18, 2017, the Ninth Circuit dismissed Plaintiff's appeal because it lacked jurisdiction. (ECF Nos. 22 & 23).

As Plaintiff still had not filed an amended complaint as of August 28, 2017, the Court issued an order to show cause why the case should not be dismissed. (ECF No. 25). Plaintiff filed a motion for stay and abeyance on October 2, 2017 (ECF No. 26), which was denied on October 5, 2017 (ECF No. 27). Plaintiff filed two more motions for extensions of time. (ECF Nos. 28, 29). The Court gave Plaintiff until February 2, 2018, to file an amended complaint. (ECF No. 30). After several more extensions and similar filings, Plaintiff filed his TAC on November 19, 2018 (ECF No. 46), which is before this Court for screening.

Plaintiff's TAC is 123 pages long and asserts claims against more than thirty defendants.

### III. ANALYSIS OF THIRD AMENDED COMPLAINT

Plaintiff asserts three causes of action in his TAC: (1) violation of the Eighth Amendment based on deliberate indifference to serious medical needs; (2) violation of the First Amendment right to freedom of speech, and (3) an additional claim for violation of the First Amendment. As the Eighth Amendment claim was already dismissed with prejudice, without leave to amend, the Court only addresses the two claims for violation of the First Amendment.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

The TAC provides very little facts supporting these claims, or explanation why he believes his first amendment rights were violated. The TAC does not include any allegations responsive to the Court's earlier instructions in its screening order, including facts suggesting

grievances were delayed because of protected activity of filing grievances, or facts showing a causal connection between an alleged adverse action and Plaintiff's protected conduct.

Rather, the TAC relies on the allegation that all Plaintiff's rights were connected and thus the deliberate indifference to serious medical needs supports the other claims. For example, Plaintiff's introductory paragraph explains: "Plaintiff files this civil lawsuit for prospective injunctive and declaratory relief and for monetary damages from defendants [sic]deliberate indifference to plaintiff's coronary artery disease needs, congestive heart failure needs, hyperlipidemia needs, and obstructive sleep apnea needs." (ECF No. 46, at p. i). Plaintiff then attempts to characterize these claims as First Amendment claims by stating that "Defendants deliberate indifference conduct has been interwined and inseperable from freedom of speech (retaliation) against plaintiff for enforcing his petition rights to redress grievances in court. i.e., this lawsuit and grievances related to this lawsuit." (*Id.* at ii) (typographical errors in original). *See also id.* ("Since January 2013 defendants at Folsom State Prison have continued the concerted deliberate indifference to plaintiff serious medical needs inseperable interwined with freedom of speech actions to current."). The facts of the case similarly concern Plaintiff's medical care, and his allegation that Defendants failed to provide constitutionally required care. Plaintiff's allegations regarding the first amendment are based on the premise that the failure to provide medical care violated his freedom of speech. *See e.g.*, *id.* at 16 ("[Defendant Jane Doe] established the first freedom of speech interwined inseperable from deliberate indifference to plaintiff obstructive sleep apnea in a series of related constitutional violations."). Plaintiff specifically alleges that certain actions were done in retaliation for grievances filed related to medical care, but fails to set forth any facts supporting this allegation. For example, Plaintiff alleges that "[t]he July 21, 2010 sleep study consult was performed and in retaliation against plaintiff filing the AI-21-2009-11637 plaintiff was transfered to PVSP on July 27, 2010 in order to prevent plaintiff form timely taking legal action and to conceal the consult at NKSP-medical records." (*Id.* at 17) (typographical errors in original). Similarly, Plaintiff alleges that "[t]he freedom of speech was expanded to include reduction of simvastatin from 40 mg (NKSP dosage) to 5mg initiated by defendant Ogbuehi." (*Id.*).

Plaintiff's allegations fail to establish a violation of his First Amendment rights based on the legal standards described above, and in earlier screening orders. Rather, the TAC attempts to assert claims that have already been dismissed without leave to amend in earlier orders.

**IV. RECOMMENDATIONS**

The Court has screened the TAC and finds that it fails to state a cognizable claim under the relevant legal standards.

The Court does not recommend granting leave to amend. This is Plaintiff's Third Amended Complaint and the previous screening orders described clearly the legal standards and elements for the claims, and also stated that no further leave to amend would be granted.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's claims be DISMISSED with prejudice for failure to state a claim;[1] and
2. The Clerk of Court be directed to CLOSE this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 1, 2019**   /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

---

[1] This Court believes this dismissal would be subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g). Coleman v. Tollefson, 135 S. Ct. 1759, 1763 (2015).